24-1340-pr
*Kanayama v. Kowal*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of November, two thousand twenty-five.

Present:

>GERARD E. LYNCH,
>WILLIAM J. NARDINI,
>STEVEN J. MENASHI,
>>*Circuit Judges*.

MASAHIDE KANAYAMA,

>*Petitioner-Appellant*,
>v.

SCOTT KOWAL, CHIEF OF U.S. PRE-TRIAL SERVICES SDNY, DOES 1-10,

>*Respondents-Appellees.*

24-1340-pr

For Petitioner-Appellant: DAVID DUDLEY, Law Offices of David M. Dudley, Los Angeles, CA.

For Respondents-Appellees: MICHAEL D. MAIMIN (Tara M. La Morte, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Colleen McMahon, *District Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Masahide Kanayama appeals from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *District Judge*), entered on April 12, 2024, denying his petition for a writ of habeas corpus under 28 U.S.C. § 2241. On April 28 and December 8, 2015, Japan's Sakura Summary Court issued warrants for Kanayama's arrest for two separate counts of damage to a structure in violation of Article 260 of the Japanese Penal Code. The arrest warrants, which have subsequently been renewed, stem from the allegation that on March 25, 2015, Kanayama damaged two Japanese sites—the Narita-san Shinsho-ji Temple and the Katori Jingu Shrine—"with an oily liquid." On December 12, 2016, Japan formally requested Kanayama's extradition from the United States pursuant to the Treaty on Extradition Between the United States of America and Japan, U.S.-Japan, Mar. 3, 1978, T.I.A.S. No. 9,625, 31 U.S.T. 892 (the "Treaty"). On May 30, 2017, the Government filed a complaint seeking Kanayama's extradition to Japan under the Treaty and 18 U.S.C. § 3184. That same day, Magistrate Judge Barbara C. Moses issued a warrant for Kanayama's arrest. Kanayama was then arrested, presented before a magistrate judge, and released on bail pending extradition proceedings. On December 6, 2022, District Judge Edgardo Ramos conducted an extradition hearing. On January 26, 2023, he certified to the Secretary of State that Kanayama was extraditable under the Treaty and § 3184. Kanayama then filed a habeas petition challenging the extradition certification. In an order entered on April 11, 2024, Judge McMahon denied Kanayama's habeas petition. Judgment was entered the following day, and Kanayama filed a timely notice of appeal. We assume the parties' familiarity with the case.

In extradition certification proceedings, courts are permitted to consider only "whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000);[1] 18 U.S.C. § 3184. In a habeas proceeding to review an extradition certification, the district court "can only inquire whether the [certifying court] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976). When reviewing the denial of habeas relief in the context of extradition proceedings, this Court's scope of analysis is "narrow." *Murphy v. United States*, 199 F.3d 599, 601 (2d Cir. 1999).

Kanayama does not contest that Judge Ramos had jurisdiction over the extradition request. He argues only that (1) the offenses for which his extradition is requested are not encompassed by the Treaty, (2) there was insufficient evidence to support the determination that there was probable cause to believe he committed those offenses, and (3) Judge Ramos and Judge McMahon improperly excluded evidence relating to both issues.[2] We reject each challenge.

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

[2] Kanayama also argues that he should not be extradited because extradition would place him in a "life-threatening" position "given the present state of his health." Appellant's Br. at 6. Because Kanayama raises this argument for the first time on appeal, we decline to consider it. *See Windward Bora LLC v. Sotomayor*, 113 F.4th 236, 245 (2d Cir. 2024). Although we have discretion to consider forfeited arguments to avoid "manifest injustice," *id.*, we discern no need to do so here. Even if Kanayama had properly raised this argument before Judge McMahon, "it is the function of the Secretary of State–*not* the courts–to determine whether extradition should be denied on humanitarian grounds." *Lalama Gomez v. United States*, 140 F.4th 49, 59 (2d Cir. 2025).

I. **Extraditable Offense**

Subject to a tightly circumscribed exception outlined in 18 U.S.C. § 3181(b), "[i]t is a fundamental requirement for international extradition that the crime for which extradition is sought be one provided for by the treaty between the requesting and the requested nation." *Lalama Gomez v. United States*, 140 F.4th 49, 55 (2d Cir. 2025). Here, Article II of the Treaty allows extradition for two categories of crimes: (1) those enumerated in a schedule annexed to the Treaty and "punishable by the laws of both Contracting Parties," and (2) "any other offense when such an offense is punishable by the federal laws of the United States and by the Laws of Japan." Treaty, Art. II. In either case, the conduct must be punishable under the laws of each country "by death, by life imprisonment, or by deprivation of liberty for a period of more than one year." *Id.* Kanayama's offenses clearly fall within the first category. The Treaty's list of extraditable offenses includes offenses "relating to the damage of property, documents, or facilities." Treaty, Schedule No. 19. In determining whether the offenses for which extradition is sought are "punishable by the laws of both Contracting Parties," *id.* Art. II, we look first to Japanese law, and then on the American side to either state or federal law. *See, e.g.*, *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 918 (2d Cir. 1981) ("The phrase 'under the law of the United States of America' in an extradition treaty referring to American criminal law must be taken as including both state and federal law absent evidence that it was intended to the contrary."); *see also Wright v. Henkel*, 190 U.S. 40, 58–59, 61 (1903) (finding that U.S.-U.K. extradition treaty's requirement that offense be "made criminal by the laws of both countries" refers to both federal and state law for purposes of American law). Both the extradition court and the habeas court held that Kanayama's alleged conduct—applying oil to the Temple and Shrine—was punishable under Article 260 of the Japanese Penal Code, under which damaging the building of another person is punishable by up

to five years in prison.³ Both courts likewise concluded that Kanayama's conduct would have been punishable under N.Y. Penal Law § 145.05, under which damaging another person's property constitutes criminal mischief in the third degree.⁴ Before this Court, Kanayama argues that for various reasons, his alleged actions—if they had been committed in New York—would not in fact have led to prosecution under New York law. But the operative question under the Treaty is not whether such conduct *would have been punished* under the laws of both countries, but whether it was *punishable* under both. At oral argument before this Court, Kanayama's counsel conceded that Kanayama "could be charged" in New York. *See* Oral Argument at 6:40–6:52. That concession settles the dual criminality question. We therefore reject Kanayama's challenge to the district court's conclusion that he was charged with an extraditable offense under the Treaty.⁵

## II. Probable Cause

Kanayama also argues that Judge McMahon erred by confirming Judge Ramos's determination that there was probable cause to believe that Kanayama committed the charged offenses. That challenge is similarly without merit.

---

³ Article 260 of the Japanese Penal Code as translated in Japan's extradition request provides: "A person who damages a building or vessel of another shall be punished by imprisonment with work for not more than 5 years." App'x at 476–477.

⁴ N.Y. Penal Law § 145.05 provides, in relevant part: "A person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: damages property of another person in an amount exceeding two hundred fifty dollars. Criminal mischief in the third degree is a class E felony." Under New York law, a class E felony is punishable by a term of imprisonment of no more than four years. N.Y. Penal Law § 70.00. Kanayama has not contested that a conviction under either Article 260 of the Japanese Penal Code or N.Y. Penal Law § 145.05 would be punishable by more than one year in prison.

⁵ Both Judge Ramos and Judge McMahon concluded that Kanayama's conduct was extraditable under the second clause of Article II of the Treaty, which describes offenses "punishable by the federal laws of the United States and by the laws of Japan," because his conduct is punishable under N.Y. Penal Code § 145.05. Treaty, Art. II. **[SA. 16-20]** Because Kanayama's offenses fall cleanly within the scope of the first clause (which includes enumerated offenses punishable by the "laws" of both the United States and Japan), we have no occasion to consider whether they also fall within the scope of the second clause, which requires that the fugitive's offense be punishable under "federal laws of the United States." Treaty, Art. II.

This Court's review of the district court's probable cause finding is limited. "[H]abeas corpus is available only to inquire . . . whether there was *any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (emphasis added). Japan's evidence clears this low bar. Japan provided: (1) flight, car rental, tollgate, and hotel records that established Kanayama was in the vicinity of both sites on the dates and times they were damaged; (2) surveillance footage that captured a person resembling Kanayama touching the affected structures around the time they were damaged; (3) an expert identification report that assessed the similarities between the person captured in the surveillance footage and Kanayama as depicted in his passport photo; (4) YouTube videos of lectures in which Kanayama says that he has previously "anointed" shrines with oil for religious reasons; (5) independent repair estimates that detail damage to both sites' affected areas; (6) and police investigation reports that include measurements and descriptions of the damage.

Kanayama challenges several of those pieces of evidence. He argues that the expert who identified Kanayama in the surveillance footage was not sufficiently qualified; that the YouTube videos are not relevant because, among other things, they were published more than two years before the alleged offenses and he did not say in the videos that he planned to anoint any other things with oil in the future; and that toll booth records are not probative of Kanayama's presence at the Temple or Shrine because Kanayama needed to pass both tolls at issue not to visit those sites, but simply to take the "fastest route from the airport to [his hotel]." Appellant's Br. at 37. "[T]he credibility of witnesses and the weight to be accorded their testimony," however, "is solely within the province of the extraditing [] judge." *Lalama Gomez*, 140 F.4th at 57. Kanayama's evidentiary challenges may be considered during the adjudication of his guilt in Japan—not in an extradition proceeding limited to ensuring "there is sufficient evidence to justify extradition under

the appropriate treaty." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). We therefore reject Kanayama's challenges to the district court's finding of probable cause.

### III. Exclusion of Evidence

Kanayama further argues that the district court improperly excluded evidence that would have "obliterated" Japan's showing of both probable cause and an extraditable offense. Appellant's Br. at 30, 40. That challenge also fails. Kanayama's "right to introduce evidence is . . . limited to testimony which explains rather than contradicts the demanding country's proof." *Lalama Gomez,* 140 F.4th at 58. And "[t]he precise scope of such explanatory evidence is largely in the . . . discretion" of the judge considering the extradition request. *Id.* The evidence that Kanayama argues was wrongfully excluded was offered to contradict Japan's proof, not to explain it. *See, e.g.*, Appellant's Br. at 27 (describing excluded "testimony from [a] wood-work expert . . . who opined, in contradiction to the unsupported claims of Japan and findings of the district court, that vegetable oil could not have possibl[y] penetrated the lacquered surfaces of the wooden objects at Katori"); *id*. at 39 (describing excluded testimony from defense expert on facial recognition that Japan's expert identification report was "fundamentally flawed" and "biased towards its conclusions"). Both judges, therefore, acted within their discretion when they declined to consider Kanayama's evidence.

\* \* \*

Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk